1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

KELLY JONES,

11

Plaintiff,

CASE NO. 2:17-CV-00293-BHS-DWC

12

v.

REPORT AND RECOMMENDATION

13

NANCY A BERRYHILL, Acting
Commissioner of Social Security,

Noting Date: November 3, 2017

14

Defendant.

15

16

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United

17

States Magistrate Judge David W. Christel. Plaintiff filed this matter seeking judicial review of

18

Defendant's denial of her application for supplemental security income ("SSI") and disability

19

insurance benefits ("DIB").

20

After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

21

erred when she failed to give proper weight to medical opinion evidence and lay testimony. Had

22

the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have

23

included additional limitations. The ALJ's error is therefore not harmless, and the undersigned

24

recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. §

405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Report and Recommendation.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On June 19, 2013, Plaintiff filed an application for SSI and DIB, alleging disability as of February 25, 2002.[1] *See* Dkt. 9, Administrative Record ("AR") 21. The application was denied upon initial administrative review and on reconsideration. AR 21. A hearing was held before ALJ Virginia M. Robinson on August 6, 2014, and a supplemental hearing was held on April 22, 2015. AR 21. In a decision dated November 15, 2015, the ALJ determined Plaintiff to be not disabled. AR 21-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. AR 1-2; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by discounting the opinions of: (1) examining psychologists Dr. David Widlan, Ph.D., and Dr. Jan Kouzes, Ed.D.; and (2) licensed mental health counselors Ms. Karen Sheridan, and Dr. Aileen Loranger, Ph.D. Dkt. 18, pp. 1, 3-17.

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

---

[1] Plaintiff previously applied for SSI in September 2006. AR 22. That application was denied on January 10, 2007 and is administratively final. AR 22. Therefore, although Plaintiff alleged disability beginning February 25, 2002, the ALJ found – and Plaintiff does not challenge – the beginning date for the period at issue was January 11, 2007, the day after the previous determination. AR 22-23; *see also* Dkt. 18, 21.

DISCUSSION

I.    **Whether the ALJ properly weighed the medical opinions of examining psychologists Drs. Widlan and Kouzes.**

Plaintiff argues the ALJ erred in her evaluation of the opinion evidence from examining psychologists Dr. David Widlan, Ph.D., and Dr. Jan Kouzes, Ed.D. Dkt. 18, pp. 1, 13-17.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).[2]

A.    Dr. Widlan

Plaintiff maintains the ALJ erred when she gave little weight to Dr. Widlan's opinion. Dkt. 18, pp. 13-16

Dr. Widlan conducted a psychological and psychiatric evaluation of Plaintiff in May 2013. AR 757-66. Dr. Widlan's evaluation included a clinical interview and mental status

---

[2] Defendant maintains two state agency reviewing physicians contradicted the opinions of Drs. Widlan and Kouzes. Dkt. 20, p. 8. Accordingly, Defendant argues the ALJ needed to provide specific and legitimate, not clear and convincing, reasons to reject the opinions of Drs. Widlan and Kouzes. *Id.* Plaintiff concedes that "specific and legitimate" is the appropriate standard. *See* Dkt. 18, p. 13; Dkt. 21, p. 6. Therefore, the Court uses the specific and legitimate standard in evaluating the ALJ's treatment of Drs. Widlan and Kouzes.

1   examination ("MSE"). AR 757-66. Dr. Widlan opined Plaintiff had social and cognitive

2   limitations in several areas of basic work activities. *See* AR 759. Specifically, Dr. Widlan found

3   Plaintiff moderately limited in her ability to learn and perform activities within a schedule,

4   maintain regular attendance, and be punctual without special supervision. AR 759. Plaintiff was

5   markedly limited in her ability to perform routine tasks without special supervision, make simple

6   work-related decisions, and maintain appropriate behavior in a work setting. AR 759. Moreover,

7   Dr. Widlan found Plaintiff severely limited in three areas: her ability to adapt to change in a

8   routine work setting; communicate and perform effectively in a work setting; and complete a

9   normal work day and work week without interruptions from psychological symptoms. AR 759.

10          After summarizing Dr. Widlan's findings, the ALJ stated:

11          I give little weight to that opinion.  (1) The assessed limitations are inconsistent
            with the claimant's ability to function well as a single parent, even taking into
12          consideration her reports of family assistance. (2) Dr. Widlan reviewed no
            records. (3) At the time of Dr. Widlan's evaluation of the claimant, [Community
13          Health Center ("CHC")] notes show that the claimant denied psychiatric
            symptoms and displayed an appropriate mood and affect.
14
    AR 34 (numbering added).
15
            First, the ALJ gave little weight to Dr. Widlan's findings because she found Dr. Widlan's
16
    findings inconsistent with Plaintiff's ability to function as a single parent. AR 34. An ALJ may
17
    discount a doctor's findings if those findings appear inconsistent with a plaintiff's daily
18
    activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Nonetheless, an ALJ
19
    cannot use a conclusory statement to reject a doctor's findings. *See Embrey*, 849 F.2d at 421-22.
20
    As the Ninth Circuit has stated:
21
            To say that medical opinions are not supported by sufficient objective findings or
22          are contrary to the preponderant conclusions mandated by the objective findings
            does not achieve the level of specificity our prior cases have required, even when
23          the objective factors are listed seriatim. The ALJ must do more than offer [her]

24

conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.

*Id.* (internal footnote omitted).

In this case, the ALJ's assertion that Dr. Widlan's findings were inconsistent with Plaintiff's ability to function as a single parent is conclusory. Specifically, the ALJ failed to explain how Plaintiff's ability to function as a single parent contradicted Dr. Widlan's findings about Plaintiff's ability to perform work activities. *See* AR 34. Hence, the ALJ's conclusory statement was not a specific, legitimate reason, supported by substantial evidence, to discount Dr. Widlan's opinion. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

Second, the ALJ gave little weight to Dr. Widlan's opinion because "Dr. Widlan reviewed no records." AR 34. Defendant concedes that this reason, standing alone, is an insufficient reason to discount Dr. Widlan's opinion. Dkt. 20, p. 6. The Court agrees. An ALJ may give less weight to an examining physician if the physician did not review records from treating physicians and instead relied entirely on the plaintiff's complaints and reports from those who know the plaintiff. *Bayliss*, 437 F.3d at 1217. Here, Dr. Widlan did not rely entirely on Plaintiff's complaints or reports from those who know Plaintiff; rather, Dr. Widlan relied on his own observations, the clinical interview, results from the MSE, and Plaintiff's reported health history and subjective complaints. *See* AR 757-66. Therefore, under these circumstances, this was not a specific, legitimate reason to give little weight to Dr. Widlan's opinion.

Third, the ALJ gave little weight to Dr. Widlan's opinion because "[a]t the time of Dr. Widlan's evaluation of the claimant, CHC notes show that the claimant denied psychiatric symptoms and displayed an appropriate mood and affect." AR 34. This reason for rejecting Dr.

1    Widlan's opinion was error. An ALJ can discount a medical opinion if there are inconsistencies

2    between that opinion and contemporaneous treatment records. *Parent v. Astrue*, 521 Fed. Appx.

3    604, 608 (9th Cir. 2013) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165

4    (9th Cir. 20008)). Yet here, the ALJ provided no discussion on how the CHC notes specifically

5    contradicted Dr. Widlan's opinion. Thus, the ALJ's conclusory statement was not a specific,

6    legitimate reason to reject Dr. Widlan's opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602

7    (9th Cir. 1989) (ALJ's rejection of a physician's opinion on the ground that it was contrary to the

8    record was error, as the ALJ failed to explain why the physician's opinion was flawed).

9        In addition, as stated above, a physician's contradicted opinion can only be rejected "for

10   specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*,

11   81 F.3d at 830-31. The fact that Dr. Widlan's opinion appeared inconsistent with the CHC notes

12   shifts the standard of review from clear and convincing to specific and legitimate reasons, but the

13   ALJ must still provide a proper reason to reject Dr. Widlan's opinion. Instead, the ALJ

14   summarily concluded the CHC notes control without explaining why they should be given

15   greater weight. The ALJ therefore erred in discounting Dr. Widlan's opinion for this reason.

16       Furthermore, the ALJ's error in giving greater weight to the CHC records is heightened

17   by the fact that the symptoms at issue are mental health symptoms. "[I]t is error for an ALJ to

18   pick out a few isolated instances of [mental health] improvement over a period of months or

19   years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v.

20   Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citation omitted). The ALJ, in one part of her

21   opinion, claimed the CHC records showed Plaintiff had "no psychiatric complaints and normal

22   psychiatric findings" around the of Dr. Widlan's evaluation in May 2013. *See* AR 32-33.

23   Nonetheless, the Court's record review shows several other contemporaneous treatment records

24

1    contradicting the ALJ's assertion — records which the ALJ does not discuss. *See e.g.*, AR 950

2    (Plaintiff experiencing stress and increased agitation in March 2013); AR 951-52 (Plaintiff

3    appearing anxious and tearful in April and June 2013); AR 921 (Plaintiff acting nervous and

4    visibly anxious in October 2013). The ALJ thus erred in selectively noting records which may

5    have shown momentary improvements, as she must consider Plaintiff's overall mental health.

6    *See Garrison*, 759 F.3d at 1017.

7         In sum, the ALJ erred by discounting Dr. Widlan's opinion for being inconsistent with

8    the CHC records because her reasoning was conclusory, not supported by specific and legitimate

9    reasons, and did not consider Plaintiff's overall mental health. Thus, the Court finds the ALJ has

10   not provided any specific and legitimate reasons, supported by substantial evidence, to give little

11   weight to Dr. Widlan's opinion. The ALJ therefore erred.

12        "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

13   F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

14   claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

15   *Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at

16   1115. The determination as to whether an error is harmless requires a "case-specific application

17   of judgment" by the reviewing court, based on an examination of the record made "'without

18   regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-

19   1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

20        Had the ALJ properly considered Dr. Widlan's opined limitations, the RFC may have

21   included several additional limitations. For example, the RFC may have included the limitations

22   that Plaintiff would have trouble making simple work-related decisions, adapting to changes in a

23   routine work setting, and completing a normal work day and work week without interruptions

24

from psychological symptoms. The RFC did not contain these limitations. *See* AR 29. Therefore,

if a limitation reflecting Dr. Widlan's opinion was included in the RFC and the hypothetical

questions posed to the vocational expert, the ultimate disability determination may have changed.

Accordingly, the ALJ's failure to properly consider Dr. Widlan's opinion regarding Plaintiff's

limitations was not harmless and requires reversal.

B. Dr. Kouzes

Plaintiff next argues the ALJ erred in giving little weight to the opinion of Dr. Kouzes.

Dkt. 18, pp. 16-18.

Dr. Kouzes conducted a psychological and psychiatric evaluation of Plaintiff, which

included a clinical interview and MSE. AR 967-72. Dr. Kouzes noted Plaintiff appeared "highly

anxious" during the evaluation; her hands shook, her body trembled, and she appeared to have

trouble breathing. AR 967-68. Additionally, Dr. Kouzes opined Plaintiff had many limitations in

her ability to conduct basic work activities. *See* AR 969-70. For instance, Dr. Kouzes found

Plaintiff moderately limited in her ability to perform routine tasks without special supervision

and ask simple questions or request assistance. AR 970. Dr. Kouzes further opined Plaintiff was

markedly impaired in her ability to adapt to change in a routine work setting. AR 970. Moreover,

Dr. Kouzes found Plaintiff severely limited in four areas: her ability to perform activities within

a schedule, maintain regular attendance, and be punctual without special supervision;

communicate and perform effectively in a work setting; complete a normal work day and work

week without interruptions from psychological symptoms; and maintain appropriate behavior in

a work setting. AR 970.

After discussing Dr. Kouzes' evaluation, the ALJ gave "little weight" to Dr. Kouzes'

opinion, stating:

1    (1) The assessed limitations are inconsistent with the claimant's activities, and
     with the findings on mental status examination. (2) In addition, to the extent Dr.
2    Kouzes and other evaluating professionals relied on the claimant's self-reported
     limitations that are not fully credible, and (3) conflict with information in the
3    record as discussed above, their opinions are discounted.

4    AR 36 (numbering added).

5         The ALJ's first and third reasons for discounting Dr. Kouzes' opinion were conclusory.

6    First, the ALJ's assertion that Dr. Kouzes' findings conflicted with Plaintiff's activities and the

7    MSE was conclusory because the ALJ did not explain which of Plaintiff's activities were

8    inconsistent, or how they were inconsistent, with Dr. Kouzes' opinion. Likewise, the ALJ's third

9    reason – that Kouzes' opinion conflicted with information in the record – was conclusory

10   because the ALJ failed to explain how Dr. Kouzes' findings conflicted with the record. Hence,

11   the ALJ's conclusory statements were not specific, legitimate reasons to reject Dr. Kouzes'

12   opinion. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an

13   accurate and logical bridge from the evidence to her conclusions so that we may afford the

14   claimant meaningful review of the SSA's ultimate findings").

15        The ALJ's second reason – that Dr. Kouzes improperly relied on Plaintiff's self-reports –

16   was also error. Defendant concedes that this reason, standing alone, is insufficient. Dkt. 20, p. 7.

17   The Court agrees. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a clinical

18   interview and MSE are "objective measures" which "cannot be discounted as a self-report").

19        For the above stated reasons, the Court concludes the ALJ failed to provide specific,

20   legitimate reasons supported by substantial evidence for giving little weight to Dr. Kouzes'

21   opinion. Therefore, the ALJ erred. Had the ALJ properly considered Dr. Kouzes' opinion, the

22   RFC and the hypothetical questions posed to the vocational expert may have included additional

23

24

1    limitations. As the ultimate disability decision may have changed, the ALJ's error is not

2    harmless. *See Molina*, 674 F.3d at 1115.

3    **II.    Whether the ALJ properly weighed the opinions of Plaintiff's licensed
         mental health counselors.**

4

5    Plaintiff next argues the ALJ did not provide germane reasons, supported by substantial

6    evidence, to discount the opinion evidence provided by Plaintiff's licensed mental health

7    counselors, Ms. Karen Sheridan, LMHC, and Dr. Aileen Loranger, LMHC, Ph.D.[3] Dkt. 18, pp.

8    3-13.

9    Pursuant to federal regulations, medical opinions from "other medical sources," such as

10   therapists and nurse practitioners, must be considered. *See* 20 C.F.R. § 404.1513(d) (2013); *see

11   also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. §

12   404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other medical source" testimony, as with all

13   lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ

14   "expressly determines to disregard such testimony and gives reasons germane to each witness for

15   doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In

16   rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane

17   reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 512.

18   A.   Ms. Sheridan and Dr. Loranger's Opinions

19   Ms. Sheridan provided therapy to Plaintiff for her anxiety and panic attacks. AR 916,

20   929-30. Ms. Sheridan stated Plaintiff had difficulty leaving her home due to her agoraphobia. AR

21   929-30. This condition "necessitated therapy sessions being conducted in her home and family

22

---

23   [3] Dr. Loranger has a doctorate degree in public health and license in mental health counseling. AR 51-52,
     958. Therefore, Dr. Loranger's testimony is considered "other" medical source testimony which can be rejected for
24   germane reasons. *See* 20 C.F.R. § 404.1513(d) (2013); *Lewis*, 236 F.3d at 512.

members shopping and bringing her groceries." AR 929. After describing Plaintiff's anxiety and

agoraphobia, Ms. Sheridan concluded:

> [Plaintiff's] severe trauma history has impacted her so greatly that she has not
> been able to move forward for the past several years. I believe her mental health
> issues and inability to function even minimally merits a valid disability
> determination.

AR 930.

Dr. Loranger also saw Plaintiff for weekly in-home therapy. AR 27, 916-26, 973-76. In a

letter, Dr. Loranger stated Plaintiff's agoraphobia causes her "visible trembling" and "recurrent,

unexpected panic attacks." AR 973-74. Dr. Loranger further described how Plaintiff's anxiety

and agoraphobia "have very marked restrictions on [Plaintiff's] activities of daily living." *See*

*e.g.*, AR 958, 973-74. For instance, Dr. Loranger explained Plaintiff was unable "to walk into a

grocery store, a laundromat, or her housing office without being accompanied by a family

member . . . despite numerous medications and ongoing therapy." [4] AR 974. In addition, Dr.

Loranger opined Plaintiff could not sustain employment due to her inability to get there (as she

has panic attacks while driving and fears of crowded buses) and an "extreme fear of crowds in

buildings" and small offices. AR 975. Dr. Loranger concluded she could not foresee Plaintiff

sustaining employment outside her home for more than two-to-three hours per week. AR 975.

B.  ALJ's Treatment of Ms. Sheridan and Dr. Loranger's Opinions

After summarizing Ms. Sheridan and Dr. Loranger's opinions, the ALJ gave "limited

weight" to their opinions, stating:

> [T]he medical evidence and [the Cooperative Disability Investigations Unit
> ("CDIU")] report contradict the statements that the claimant cannot leave her
> home unaccompanied. (1) Detective Fenton observed the claimant's relaxed

---

[4] Dr. Loranger also testified at Plaintiff's hearing about her agoraphobia, panic disorder, and PTSD, and described similar symptoms. *See* AR 50-65.

1    interactions with other parents at the bus stop, and he described her comfortable
2    interaction when he interviewed her. His observations point to greater social
     functioning than described by the therapists. (2) The statements that the claimant
3    is unable to function even minimally and has marked limitations in activities of
     daily living are contradicted by the claimant's demonstrated parenting abilities
4    and her reports of ability to shop, care for her home, handle money and so forth.
     (3) The therapists' statements regarding the claimant's social isolation are
5    contradicted by treatment notes, as discussed above.

6    AR 35 (numbering added); *see also* AR 1003-16 (CDIU report).

7         The ALJ's three reasons for discounting Ms. Sheridan and Dr. Loranger's opinions were

8    all conclusory. The ALJ first gave limited weight to the opinions of Ms. Sheridan and Dr.

9    Loranger because she found the CDIU report[5] contradicted their opinions. In general, an ALJ

10   may discredit lay testimony if it conflicts with Plaintiff's activities. *See e.g.*, *Carmickle*, 533 F.3d

11   at 1164. Yet as previously explained, an ALJ cannot reject an opinion without explaining her

12   reasoning for rejecting that opinion. *Embrey*, 849 F.2d at 421-22.

13        Here, the ALJ noted that in the CDIU report, the detective described Plaintiff as having

14   "no issues with talking, smiling, conversing" with other parents at her daughter's bus stop. *See*

15   AR 35, 1011-12. The ALJ also noted the detective said Plaintiff was cordial and appeared

16   "very comfortable" during his interview with her. *See* AR 35, AR 1012. While the ALJ

17   claimed these observations "contradict the [therapists'] statement[s] that the claimant cannot

18   leave her home unaccompanied," this finding is not supported by substantial evidence. *See* AR

19   35. In particular, the CDIU report shows Plaintiff was actually accompanied by her daughter

20   and an adult male friend when she went to the bus stop. *See* AR 1011-12. Thus, this

21   observation does not contradict the therapists' statements that Plaintiff cannot leave her home

22   _____

23        [5] The Social Security Act authorizes the Commissioner to conduct investigations as the Commissioner
     deems them necessary or proper. *Elmore v. Colvin*, 617 Fed. Appx. 755, 757 (9th Cir. 2015) (citing 42 U.S.C. §
24   405(b)(1)). As a result, the Commissioner may request CDIU detectives investigate disability claims. *See id.*

1    unaccompanied, as Plaintiff did not leave her home unaccompanied as the ALJ asserted.

2    Furthermore, the ALJ failed to explain how Plaintiff appearing comfortable during the

3    interview shows she cannot leave her home unaccompanied, as Plaintiff was actually in her

4    home during the interview. *See* AR 35, 1012. The ALJ also failed to explain how Plaintiff's

5    interview demeanor showed she has "greater social functioning than described by the

6    therapists." *See* AR 35. Therefore, the ALJ erred in finding the CDIU report contradicted the

7    opinions of Ms. Sheridan and Dr. Loranger, as her conclusory reasoning was not a germane

8    reason, supported by substantial evidence, under these circumstances. *See Embrey*, 849 F.2d at

9    421-22.

10          Second, the ALJ discounted the opinions of Ms. Sheridan and Dr. Loranger because she

11   found Plaintiff's daily activities contradicted their opinions. *See* AR 35. The ALJ referenced

12   Plaintiff's "ability to shop, care for her home, [and] handle money" as examples of this

13   contradiction. AR 35. Nevertheless, the ALJ failed to explain how these activities specifically

14   conflicted with Ms. Sheridan and Dr. Loranger's opinions on Plaintiff's anxiety, panic attacks,

15   agoraphobia, and subsequent ability to work. *See* AR 35. Therefore, the ALJ did not provide a

16   germane reason, supported by substantial evidence, to discount Ms. Sheridan and Dr.

17   Loranger's opinions. *See Popa v. Berryhill*, --- F.3d ----, 2017 WL 4160041, at *5 (9th Cir.

18   2017) (ALJ did not provide germane reasons for discounting lay testimony when he failed to

19   explain how the plaintiff's daily activities contradicted the lay testimony).

20          Lastly, the ALJ gave limited weight to the opinions of Ms. Sheridan and Dr. Loranger

21   because she found their opinions contradicted "by treatment notes, as discussed above." AR 35.

22   An ALJ may discredit lay testimony if it conflicts with the medical evidence. *Lewis*, 236 F.3d at

23   511 (citation omitted). Here, however, the ALJ did not explain how the treatment notes

24

1    contradicted Ms. Sheridan and Dr. Loranger's opinions, nor did she say which treatment notes

2    contradicted their opinions. *See* AR 35. Therefore, the ALJ did not provide a germane reason,

3    supported by substantial evidence, to support her assertion. *See McCann v. Colvin*, 111

4    F.Supp.3d 1166, 1175 (W.D. Wash. June 11, 2015) (ALJ failed to provide germane reasons for

5    discounting lay testimony when he provided no explanation for how the lay testimony was

6    contradicted by the medical record, plaintiff's daily activities, or his work history). On remand,

7    if the ALJ intends to find Ms. Sheridan or Dr. Loranger's opinions inconsistent with the CDIU

8    report, Plaintiff's activities, or the medical record, the undersigned recommends the Court order

9    the ALJ to specifically explain how these aspects of the record contradict their opinions.

10        For the above stated reasons, the Court concludes the ALJ failed to provide germane

11    reasons supported by substantial evidence for giving little weight to Ms. Sheridan and Dr.

12    Loranger's opinions. Therefore, the ALJ erred. Had the ALJ properly considered Ms. Sheridan

13    and Dr. Loranger's opinions, the RFC and the hypothetical questions posed to the vocational

14    expert may have included additional limitations. As the ultimate disability decision may have

15    changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

16                                          CONCLUSION

17        Based on the above stated reasons, the undersigned recommends this matter be reversed

18    and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for

19    further proceedings consistent with this Report and Recommendation. The undersigned also

20    recommends judgment be entered for Plaintiff and the case closed.

21        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

23    6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

24

REPORT AND RECOMMENDATION - 14

1    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

2    imposed by Rule 72(b), the clerk is directed to set the matter for consideration on November 3,

3    2017, as noted in the caption.

4         Dated this 16th day of October, 2017.

5

6

7    David W. Christel
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 15